FILED - GR
October 1, 2010 4:15 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY __aid__/_____ SCANNED BY /TD/ /C-/

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Chris Bussell**, )
)
  Plaintiff, )
) Hon.    **1:10-cv-967**
 v. )
) **Robert Holmes Bell**
**Firstsource Financial Solutions,** ) **U.S. District Judge**
**LLC**, a Delaware limited liability )
company, )
)
  Defendant. )
_____)

**Complaint**

**I.**  **Introduction**

  1.  This is an action for damages, brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

**II.**  **Jurisdiction**

  2.  This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III.**  **Parties**

  3.  Plaintiff Chris Bussell is a natural person residing in Kent County, Michigan. Miss Bussell is a "consumer" and "person" as the terms are defined and/or used in the FDCPA.

1

Miss Bussell is a "consumer," "debtor" and "person" as the terms are defined and/or used in the MOC.

4. Defendant Firstsource Financial Solutions, LLC ("FFS") is a Delaware limited liability company, doing business with a mailing address of P.O. Box 025437, Miami, Florida 33102-5437. According to documents filed by FFS with the State of Michigan, the principal office of FFS is located at 1661 Lyndon Farm Court, Louisville, Kentucky 40223-4029. The registered agent for FFS in Michigan is National Registered Agents, Inc., 712 Abbott Road, East Lansing, Michigan 48823. FFS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. FFS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. FFS is a "debt collector" as the term is defined and/or used in the FDCPA. FFS is licensed (Nos. 2401001792, 2401001931 and 2401002413) by the State of Michigan to collect consumer debts in Michigan. FFS is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

**IV. Facts**

5. On June 24, 2004, a person named Rhonda K. Hartman submitted an application to Stillwater National Bank ("Stillwater") for a student loan, to be underwritten by Sallie Mae. Miss Bussell also signed the application as a potential co-borrower. The application was sent for processing to Sallie Mae, P.O. Box 59030, Panama City, Florida 32412-9030.

6. By letter dated August 3, 2004, Sallie Mae notified Ms. Hartman that her request to have Miss Bussell be a co-borrower for Ms. Hartman's student loan was denied because Miss Bussell did not meet certain eligibility requirements. The letter stated that Sallie Mae also had

2

notified Miss Bussell that Miss Bussell's application to be a co-signer for Ms. Hartman's student loan was denied. The letter stated that if Sallie Mae received an application for a new, creditworthy co-borrower within 90 days, Sallie Mae would continue to process Ms. Hartman's loan application.

7. Miss Bussell is not, and has never been, a co-borrower on any student loan obtained by Ms. Hartman from Stillwater, Sallie Mae, or any other entity.

8. Miss Bussell is not, and has never been, obligated to pay any student loan obtained by Ms. Hartman from Stillwater, Sallie Mae, or any other entity.

9. Apparently, Ms. Hartman later obtained a student loan from Stillwater. Apparently, Sallie Mae underwrote and/or purchased Ms. Hartman's student loan.

10. In 2005, Miss Bussell lost track of Ms. Hartman and her whereabouts. Miss Bussell had only sporadic and occasional contact with Ms. Hartman over the next five years.

11. Apparently, Ms. Hartman defaulted on her obligation to pay her student loan.

12. On or about August 17, 2010, Miss Bussell went to the bank to become pre-qualified for a mortgage loan to purchase a home. As part of that process, the bank obtained Miss Bussell's credit reports and found that Sallie Mae was causing derogatory information regarding Ms. Hartman's unpaid student loan to be reported on Miss Bussell's credit reports, making Miss Bussell ineligible for a mortgage loan.

13. At no time prior to August 2010 did Miss Bussell ever receive from Sallie Mae or any other entity, any contract, note, disclosure, billing statement, invoice, writing, document, telephone call or communication of any type whatsoever, stating or even suggesting that Miss Bussell was somehow obligated to pay any student loan obtained by Ms. Hartman from

3

Stillwater, Sallie Mae, or any other entity.

14. On or about August 17, 2010, Miss Bussell communicated by telephone with Sallie Mae regarding Ms. Hartman's student loan. Sallie Mae would not discuss the matter with Miss Bussell, stating that the account had been turned over to a collection agency. Sallie Mae instructed Miss Bussell to contact Firstsource Financial Solutions, LLC at 888-891-9627.

15. In late August 2010, Miss Bussell spoke with a FFS employee named Stephanie. The FFS employee stated that FFS represented Sallie Mae and was attempting to collect a debt stemming from a student loan made to Ms. Hartman. The FFS employee stated that Miss Bussell was a co-borrower on the loan. Miss Bussell stated that she was not a co-borrower on the loan. Miss Bussell stated that she did not owe the debt.

16. In late August or early September, Miss Bussell transmitted a copy of the August 3, 2004 Sallie Mae letter to FFS.

17. FFS and its employees continued to make multiple telephone calls to Miss Bussell, demanding payment of the alleged debt.

18. FFS repeatedly placed telephone calls to Miss Bussell. A partial list of the telephone calls placed by FFS to Miss Bussell is as follows:

>September 8, 2010 at 2:50 p.m.
>
>September 9 2010 at 11:56 a.m.
>
>September 9, 2010 at 4:49 p.m.
>
>September 10, 2010 at 10:26 a.m.
>
>September 10, 2010 at 11:58 a.m.
>
>September 10, 2010 at 12:34 p.m.

        September 10, 2010 at 12:34 p.m.

        September 10, 2010 at 1:11 p.m.

        September 10, 2010 at 3:24 p.m.

        September 10, 2010 at 4:10 p.m.

        September 10, 2010 at 4:10 p.m.

        September 10, 2010 at 4:14 p.m.

        September 10, 2010 at 4:14 p.m.

        September 10, 2010 at 4:15 p.m.

        September 10, 2010 at 4:23 p.m.

        September 10, 2010 at 4:48 p.m.

        September 11, 2010 at 10:06 a.m.

        September 11, 2010 at 10:07 a.m.

        September 11, 2010 at 12:28 p.m.

        September 13, 2010 at 1:01 p.m.

        September 13, 2010 at 1:10 p.m.

        September 13, 2010 at 2:12 p.m.

19.     FFS and its employees caused Miss Bussell's telephone to ring and/or engaged Miss Bussell in telephone conversation repeatedly and/or continuously with intent to annoy, abuse and/or harass Miss Bussell, violating the FDCPA, 15 U.S.C. § 1692d.

20.     On or about September 7, 2010, a FFS employee telephoned Miss Bussell and left a recorded message on Miss Bussell's voice mail or telephone answering machine, stating as follows: "Hello. This message is for Christine Bussell. Hi Christine, this is Stephanie calling

from Firstsource. You were supposed to get back in contact with me on Tuesday in reference to your account. Please call me. It is very imperative that I speak with you on this behalf at 1-888-891-9627 and my direct extension is 466. Thank you."

21.     On or about September 10, 2010, a FFS employee telephoned Miss Bussell and left a recorded message on Miss Bussell's voice mail or telephone answering machine, stating as follows: "Chris, this is Stephanie trying to get back in contact with you. Call me at 1-888-891-9627 and my extension is 466. I need to speak with you. I received your fax. Bye."

22.     The FFS employee telephoned Miss Bussell in connection with an effort to collect an alleged debt.

23.     The only reason the FFS employee telephoned Miss Bussell was to attempt to collect a debt.

24.     The FFS employee telephoned Miss Bussell and left recorded messages on Miss Bussell's voice mail or telephone answering machine for the purpose of inducing Miss Bussell to telephone FFS to discuss an alleged debt.

25.     Each recorded messages left by the FFS employee on Miss Bussell's voice mail or telephone answering machine conveyed information regarding a debt directly or indirectly to Miss Bussell.

26.     Each recorded messages left by the FFS employee on Miss Bussell's voice mail or telephone answering machine was a "communication" as the term is defined and/or used in the FDCPA and MOC.

27.     Each recorded message left by the FFS employee on Miss Bussell's voice mail or telephone answering machine did not disclose in the message that the telephone call was from a

6

debt collector.

28. By failing to disclose in a recorded message left by the FFS employee on Miss Bussell's voice mail or telephone answering machine that the caller was a debt collector, FFS and its employee violated the FDCPA, 15 U.S.C. § 1692e(11).

29. When the FFS employee left the recorded messages for Miss Bussell on her voice mail or telephone answering machine, FFS was aware or should have been aware of multiple published federal district court opinions in which the courts held that it is unlawful for a debt collector to leave a recorded message for a debtor/consumer without identifying itself as a debt collector. *See e.g., Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 281 F.Supp.2d 1156 (N.D. Cal. 2003); *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F.Supp.2d 1104 (C.D. Cal. 2005); *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643 (S.D.N.Y. 2006).

30. When the FFS employee left the recorded messages for Miss Bussell on her voice mail or telephone answering machine, it was the practice of FFS in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine without disclosing in the message that the telephone call was from a debt collector.

31. One or more of the recorded messages left by the FFS employee on Miss Bussell's voice mail or telephone answering machine did not disclose in the message that the telephone call was from FFS.

32. One or more of the recorded message left by the FFS employee on Miss Bussell's voice mail or telephone answering machine did not disclose in the message the name of the company that was placing the telephone call to Miss Bussell.

33. FFS and its employee left a recorded message on Miss Bussell's voice mail or telephone answering machine that did not include a meaningful disclosure of the caller's identity, which violated the FDCPA, 15 U.S.C. § 1692d(6).

34. When the FFS employee left the recorded message for Miss Bussell on her voice mail or telephone answering machine did not disclose in the message the name of the company that was placing the telephone call to Miss Bussell, it was the practice of FFS in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine without disclosing in the message the name of the company that was placing the telephone call.

35. The recorded messages left by the FFS employee on Miss Bussell's voice mail or telephone answering machine did not reveal in the messages the purpose of the telephone call.

36. The recorded messages left by the FFS on Miss Bussell's voice mail or telephone answering machine concealed the purpose of the telephone calls.

37. The recorded messages left by FFS and its employee on Miss Bussell's voice mail or telephone answering machine did not reveal and/or concealed the purpose of the communications, which violated the MOC, M.C.L. § 339.915(e).

38. When the FFS employee left the recorded messages for Miss Bussell on her voice mail or telephone answering machine, it was the practice of FFS in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine without revealing the purpose of the telephone call.

39. When the FFS left the recorded message for Miss Bussell on her voice mail or telephone answering machine, it was the practice of FFS in connection with the collection of

debts to leave a recorded message on the consumer's voice mail or telephone answering machine that concealed the purpose of the telephone call.

40. In the one-year period immediately preceding the filing of this complaint, FFS in efforts to collect a debt telephoned more than one hundred consumers with Michigan addresses and left recorded messages on the voice mail or telephone answering machine of the person called, without disclosing in the message that the telephone call was from a debt collector.

41. In the one-year period immediately preceding the filing of this complaint, FFS in efforts to collect a debt telephoned more than one hundred consumers with Michigan addresses and left recorded messages on the voice mail or telephone answering machine of the person called, without disclosing in the message the name of the company that was placing the telephone call.

42. In the one-year period immediately preceding the filing of this complaint, FFS in efforts to collect a debt telephoned more than one hundred consumers with Michigan addresses and left recorded messages on the voice mail or telephone answering machine of the person called, without revealing in the message the purpose of the telephone call.

43. In the one-year period immediately preceding the filing of this complaint, FFS in efforts to collect a debt telephoned more than one hundred consumers with Michigan addresses and left recorded messages on the voice mail or telephone answering machine of the person called, which message concealed the purpose of the telephone call.

44. The FFS employee violated FFS company policy when the FFS employee left a message on Miss Bussell's voice mail or telephone answering machine and did not disclose in the message that the telephone call was from a debt collector.

45. The FFS employee did not violate FFS company policy when the FFS employee left a message on Miss Bussell's voice mail or telephone answering machine and did not disclose in the message that the telephone call was from a debt collector.

46. The FFS employee violated FFS company policy when the FFS employee left a message on Miss Bussell's voice mail or telephone answering machine and did not disclose in the message that the telephone call was from FFS.

47. The FFS employee violated FFS company policy when the FFS employee left a message on Miss Bussell's voice mail or telephone answering machine and did not state in the message the name of the company that was placing the telephone call to Miss Bussell.

48. The FFS employee did not violate FFS company policy when the FFS employee left a message on Miss Bussell's voice mail or telephone answering machine and did not state in the message the name of the company that was placing the telephone call to Miss Bussell.

49. The FFS employee violated FFS company policy when the FFS employee left a message on Miss Bussell's voice mail or telephone answering machine and did not reveal in the message the purpose of the telephone call.

50. The FFS employee did not violate FFS company policy when the FFS employee left a message on Miss Bussell's voice mail or telephone answering machine and did not reveal in the message the purpose of the telephone call.

51. The FFS employee intended to say the words she said when she left the recorded messages on Miss Bussell's voice mail or telephone answering machine.

52. On or about September 13, Miss Bussell received a telephone call from FFS. Miss Bussell spoke with a FFS employee identified who identified himself as Brian Shively. Mr.

Shively demanded payment of the debt. Mr. Shively stated that the August 3, 2004 Sallie Mae letter stating that Miss Bussell did not qualify to be a co-borrower on Ms. Hartman's student loan was merely a "generic" letter. Mr. Shively stated that perhaps the letter was the result of a "keystroke error." Mr. Shively stated that Miss Bussell's "little letter" "meant nothing" and that she may just as well "shred it." Mr. Shively stated that if Miss Bussell did not agree to pay the loan, FFS would find out where Miss Bussell is employed and would garnish Miss Bussell's wages and that FFS would embarrass Miss Bussell.

53. FFS and its employee made falsely threatened garnishment of Miss Bussell's wages, violating the FDCPA and MOC.

54. On or about September 24, 2010, a FFS employee telephoned Miss Bussell and left a recorded message on Miss Bussell's voice mail or telephone answering machine, stating as follows: "Chris, this is Stephanie from Firstsource Financial Solutions. I'm calling you because, I mean, you know, you're still eligible for this debt. You need to call me as soon as possible at 1-888-891-9627, extension 466. You're gonna eventually have to get this off your name. So call me. Bye."

55. On or about September 30, 2010, Miss Bussell spoke by telephone with a FFS employee who identified herself as Stephanie. The FFS employee stated that Miss Bussell was responsible for paying Ms. Hartman's student loan. Miss Bussell explained that she signed only one loan application to be a co-borrower with Ms. Hartman and that Sallie Mae had denied the application, sending a denial letter to Ms. Hartman and to Miss Bussell. Hearing that, the FFS employee falsely stated that even though Miss Bussell had signed only one loan application, the loan application could be used for an indefinite period of time to open any number of loans.

11

Miss Bussell stated that FFS was to stop telephoning Miss Bussell during the day because Miss Bussell's employer did not allow the calls and because the calls were inconvenient to Miss Bussell. Hearing that, the FFS employee wrongfully stated that FFS would continue to telephone Miss Bussell during the day and at her place of employment until the debt was paid. Miss Bussell stated that she disputed owing the debt. The FFS employee transferred Miss Bussell to another FFS employee who identified himself as Mr. Rodriguez. Miss Bussell again explained that she signed only one loan application in June 2004 and that Sallie Mae sent Ms. Hartman and Miss Bussell a denial letter in August 2004. Hearing that, the FFS employee falsely stated that the August 2004 Sallie Mae denial letter meant nothing because the loan application that Miss Bussell signed in June 2004 was used to provide a loan to Ms. Hartman in October 2007. Miss Bussell stated that she disputed the debt. Hearing that, the FFS employee falsely stated that Miss Hartman could no longer dispute the debt because the time to dispute the debt expired thirty days after the loan proceeds were disbursed in 2007.

56. FFS and its employees falsely stated or implied to Miss Bussell that if Miss Bussell did not settle the debt with FFS, Ms. Bussell would be sued to collect the debt.

57. The FDCPA does not require the consumer to provide *any reason at all* in order to dispute a debt. *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234 (D. Haw. 2002); (*Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004) (a consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all); *Whitten v. ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. Ill. May 23, 2002) (imposing a requirement that a consumer have a 'valid' reason to dispute the debt is inconsistent with FDCPA); *Castro v. ARS National Servs., Inc.*, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); *Frey*

v. *Satter, Beyer & Spires*, 1999 WL 301650 (N.D. Ill. May 3, 1999); *DeSantis v. Computer Credit, Inc.*, 269 f.3d 159 (2nd Cir. 2001); *Mejia v. Marauder Corporation*, 2007 WL 806486 (N.D. Cal. 2007) (unlawful to suggest that proof of payment required for dispute). The FDCPA allows the consumer to orally dispute a debt. *Brady v. The Credit Recovery Company, Inc.*, 160 F.3d 64 (1st Cir. 1998). The FDCPA does not limit the time period for disputing a debt. A consumer can always dispute a debt with a debt collector, regardless of the passage of time.

58. FFS and its employee falsely stated or implied to Miss Bussell that Miss Bussell was not allowed to dispute the debt because the time to dispute the debt had passed.

59. It is a violation of the FDCPA for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. 15 U.S.C. § 1692e(8).

60. It is a violation of the FDCPA for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

61. FFS and its employee made false statements regarding the rights of a consumer to dispute a debt as afforded by the FDCPA.

62. FFS and its employee made false statements to Miss Bussell regarding Miss Bussell's rights to dispute the debt.

63. The FFS employees who spoke by telephone with Miss Bussell intended to speak the words they spoke to Miss Bussell.

64. Miss Bussell dispute the alleged debt.

65. Miss Bussell refuses to pay the alleged debt.

66. Miss Bussell is represented by the undersigned attorney in connection with the defense of any attempts by FFS or any other entity to collect the disputed debt.

67. As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, acute embarrassment and suffering for which she should be compensated in an amount to be established by jury and at trial.

V.  **Claims for Relief**

### Count 1– Fair Debt Collection Practices Act

68. Plaintiff incorporates the foregoing paragraphs by reference.

69. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

   a) Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress and abuse plaintiff in connection with the collection of a debt;

   b) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

   c) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt; and

   d) Defendant violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

   a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

    b)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

    d)     Such further relief as the court deems just and proper.

### Count 2– Michigan Occupational Code

70.     Plaintiff incorporates the foregoing paragraphs by reference.

71.     Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

    a)     Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

    b)     Defendant violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

    c)     Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the seizure, garnishment, attachment or sale of the debtor's property;

    d)     Defendant violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

    e)     Defendant violated M.C.L. § 339.915(n) by causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at unusual times or places which are known to be inconvenient to the debtor; and

f) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2); and

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: October 1, 2010

/s/ Phillip C. Rogers

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com